CAUSE NO. 11965(C)                    10-5-15
WR-38,681-05

COURT OF CRIMINAL APPEALS
P.O. Box 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

RE: SUPPLEMENT CONTAINING FEDERAL LAW
PERTAINING TO APPLICANTS GROUNDS.
* Not received copy of States Answer to 11.07

Dear Abel Acosta, Court Clerk

        Please file this Supplement in the above cause
No. 11965(C),, WR-38,681-05.

        * Applicant has not yet received any word on his
motion to Compell the District Court, Cherokee Co. To send
a copy of the States "Answer" to the filed 11.07

                        Thank You Sir!

                        Jeffrey L. Ward

                        Applicant Pro-Se

RECEIVED IN
COURT OF CRIMINAL APPEALS
OCT 12 2015
Abel Acosta, Clerk

CAUSE NO. 11965(C)
WR-38,681-05

Jeffrey L. Ward, Pro-Se

VS.

The State of Texas

In The Court

OF

CRIMINAL APPEALS

---

## SUPPLEMENT CONTAINING FEDERAL LAW Pertaining to Applicant's Grounds

Applicant claims a New Legal basis available under Texas State Law. See: Ex Parte Chabot, explicitly recognized Due Process claim of Unknowing use of false testimony at 300 S.W.3d 768[TCA 2009). "Chabot was the first case in which we explicitly recognized an unknowing-use due process claim; Therefore, that legal basis was unavailable at the time Applicant filed his first previous application. See Tex. Code of Crim. Proc. art. 11.07, §4(a)(1)."

Applicant has supplied an Affidavit as proof of recantation of the Chief witness Tabitha Brown. Stating her testimony was false, and fabricated by coercers. Applicant asserts that it is false also, as her testimony is totally inaccurate compared to the Professional Doctor's diagnois. See the Supplied State's Brief. Also, the transcript of the Evidentuary Hearing held by Judge Bascom W. Bentley III on July 8, 1993 at the 2nd District Court, Rusk Texas, corroborates the recantation with evidence of assaults of witnesses at court, during the trial. The Case Law in this area frequently refers to the use of perjured testimony, but it is sufficient that the testimony was "false". Napue, 360 U.S. at 269, Ex Parte Robbins, 360 SW. 3d at 459.

1.

"While a recantation of trial testimony by a witness must be looked upon with the utmost suspicion, its lack of veracity can not in and of itself, establish whether testimony given at trial was in fact truth; rather, the District Court must weigh all the evidence of perjury before it, including but not limited to the recantation, before reaching such a conclusion". Ortega V. Duncan, 333 F.3d 107. "Determination by the district Court that witnesse's recantation as the shooter was not credible was insufficient to establish that witnesse's testimony at trial was not perjured, where other evidence showed that trial testimony was perjured." Ortega V. Duncan, 333 F.3d 107.

The Supreme Court has indicated and this Court has explained that "[T]estimony that is untrue is one of many ways jurists define false testimony [and the] Supreme Court has indicated that improper suggestions, insinuations and espicially, assertions of personal knowledge constitute false testimony." Ex Parte Chavez No. AP-76 291, 2010 Tex. Crim. App. Unpub. LEXIS 686, 2010 WL 4638619, at *7 (Tex. Crim. App. Nov. 17, 2010) not designated for publication) quoting Berger V. United States, 295 U.S 78, 88, 55 s.ct. 629, 79 L.Ed. 1314 (1935) and Black's Law Dictionary 1485-86 (7th ed. 1999)).

In both grounds of Applicants Application for habeas corpus, it does state quotes from the alleged victim, refered to in the State's Brief as the record reflects, Jennifer or Patricia Sexton asserted several times during trial that: "Jeff did the same thing to Tabitha that he did to me." alleged victim more likely than not, was prompted to say the above, due to the fact that Tabitha was not testifying at trial, and the mother of the alleged victim and her manfriend, the alleged coercers, were attempting to make sure Tabitha was included in the Jury's conclusions. Also

Applicant asserts that Doctor Neilson's testimony was misleading and mislead the jury. Applicant asserts also, that the Prosecutor knew by his hearing the doctors testimony, and knowing the alleged victims testimony.

2.

as well there outcry statements, that defendant was alleged to have put his digit in the rectums of the alleged victims only. The doctor, stating that the girls had brusing between there rectum and vagina, and the vagina was so affected that it was swollen, red and brused, did have to indicate to the state the misleading nature of his testimony. The duty to correct known false evidence is not only a prosecutorial ethic, but a constitutional requirement. Mooney V. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935) See also, Pyle V. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942). Alcorta V. Texas, 355 V.S. 28, 78 S.Ct. 103, 2 L.Ed. 2d 9 (1957) and Miller v. Pate, 386 US. 1, 87 S.Ct. 785, 17 L.Ed. 2d 690 (1967) It does not matter whether the prosecutor actually knows that the evidence is false; it is enough that he or she should have recognized the misleading nature of the evidence. See US. V. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed. 2d 342, 349 (1976), citing mooney for principle that due process is violated when false evidence goes uncorrected by a prosecutor who knew or should of known of the perjury". Giglio V. United States, 405 U.S. at 154, 92 S.Ct. 766, 31 L.Ed. 2d at 109 (whether the nondisclosure [is] a result of negligence or design, it is the responsibility of the prosecutor.") Napue V. Illinois, 360 US. 264, 270, 79 S.Ct. 1173, 1177, L.Ed. 2d 1217, 1221 (1959).

This Court has recognized that misleading evidence is synonymous with falseness, the question is whether the trier of fact received a false impression. Ex Parte Chhah remani, 392 S.W. 3d 470, The Federal Courts as well "To establish a due process violation based on the State's knowing use of false or misleading evidence...the three prongs are,

1.) The Evidence was false

2.) The Evidence was Material

3.) The Prosecution Knew the Evidence was false

The Applicant asserts that the evidence given by the doctor was of a misleading nature, because of its not being accurate in comparison to the alleged victims testimony.

3.

Creating a false impression of the facts. This Court has held that testimony may be false because of its creating a false impression of the facts. Ex Parte Robbins, 360 s.w. 3d at 462, Chahremani, 332 s.w. 3d 477-78 ("It is sufficient if the witness's testimony gives the trier of fact a false impression.") The doctor's testimony included evidence of medicial conditions, that could not possibly of been derived from the alleged act of the defendant. Which could not keep the jury from receiving a false impression of the facts, facts being that the alleged victims testified. "He touched the inside of my butt or "He put his finger in my butt", See Supplied States Brief. The Outcry written statements indicated the same digital penatration of the rectum. Applicant asserts that any evidence other than what the alleged victims swore to as truth, was misleading, especially, when that evidence expounds in an expansion of the alleged victims testimony, or a bolstering of there testimony. The witnesse's were never impeached when the doctor added weight or credance to there testimony. See Farris V. State, 643 S.W. 2d 694 (Tex. Crim. App. 1982). The doctor's testimony also was never corrected, previously discussed herein.

The one other prong of Giglio is the Material aspect of testimony. At Ex Parte Robbins, 360 s.w. 3d at 459 "Accordingly, the testimony used by the state must have been false, and it must have been material to the defendant's conviction, meaning "there is a reasonable likelihood that the false testimony could have affected the jury. U.S. V. Agurs, 427 U.S. 97, 103-04, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976) Ghhahremani, 332 S.W. 3d 470, 478 (Tex. Crim. App. 2011).

Applicant asserts that seemingly either way one looks at the testimonies, either the alleged victims testimony is false, because

of its being inaccurate with the doctor's testimony, or assertions of personal knowledge, or Affidavit corroborated by a transcript of an evidentuary hearing. If one looks at the doctor's report or testimony, the misleading nature, and the going above and beyond the testimonies or outcrys of the alleged victims, causes his testimony to allow the jury to convict the defendant on facts which were never mentioned before trial or during trial by the alleged victims. Applicant asserts that this was not a fair and impartial trial. "There is nothing fair about a trial in which it can be shown that the State deliberately utilized perjured, fabricated, false or just plain misleading evidence to obtain a conviction." Berger V, U.S., 55 S.Ct. 629 (1935) "Known use of false testimony Violates the federal requirement of due process and denies the accused a fair trial. Mooney V. Holohan, 55 S. Ct. 340 (1935).

Conviction obtained through perjury, known to be such by representives of the State, violates due process and the same result obtains when the State allows the perjured testimony to go uncorrected. Napqu V. Illinois, 79 S. Ct. 1173 (1959).

The State knew the testimony of the two alleged victims was no where close to the testimony of it's doctors testimony, proving the prosecutor, in that, if he believed his doctor. The testimony of the alleged victims has to be false, or if he believed the two girls, then his doctor's testimony is incredibly misleading, and will require correction. Which the prosecutor never did.

Respectfully Submitted

Jeffrey L Ward

## CERTIFICATE OF SERVICE

By my hand I do swear that a true and correct copy of the foregoing document was mailed to the Clerk of the 2nd Judicial District Court of Cherokee County, at Rusk, Texas, Ms. Janet Gates, District Clerk, 135 S. Main St., 2nd floor, Rusk, Tx. 75785 with the proper postage attached on this day the 5th of Oct. 2015,

Jeffrey L. Ward

Applicant Pro-Se
Jeffrey L. Ward